**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

**PAUL DURLING,**

                                  **Plaintiff,**

                **v.**                                    **6:03-CV-724**
                                                     **(FJS/DRH)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**

───────────────────────────────

**APPEARANCES**                         **OF COUNSEL**

**OFFICE OF STEPHEN J. MASTAITIS, JR.**    **STEPHEN J. MASTAITIS, JR., ESQ.**
1412 Route 9P
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**OFFICE OF THE UNITED**              **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Chief Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Paul Durling commenced this action against Defendant Commissioner of Social

Security, pursuant to 42 U.S.C. § 405(g), seeking a review of Defendant's decision denying his

application for benefits under the Social Security Act.

Currently before the Court are Magistrate Judge Homer's March 29, 2005 Report-

Recommendation and Order and Defendant's objections thereto.

## II. BACKGROUND

On February 6, 1981, Plaintiff filed his first application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401, claiming that he was disabled as a result of back and neck injuries that he sustained as a result of three automobile accidents in which he was involved during the course of his employment.  *See* Report-Recommendation and Order at 2-3, 6. Defendant denied Plaintiff's application initially and on reconsideration.  *See id.* at 2.  Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ").  *See id.*  In a decision dated March 30, 1982, the ALJ denied Plaintiff's claims.  *See id.*  Defendant's Appeals Council denied Plaintiff's request for review, thus making the ALJ's findings Defendant's final decision.  *See id.*

Between 1975 and 1999, several physicians treated Plaintiff for various back conditions, including a reduction in spine flexion and extension.  *See id.* at 7.  These physicians prescribed several treatment modalities for Plaintiff, including muscle relaxants, local heat, exercise programs, electric nerve stimulation, and several medications for pain.  *See id.* at 6.  Plaintiff also underwent physical therapy and physiotherapy, had chiropractic treatment for many years, and had halter traction.  *See id.* at 12.

In addition, from 1980 to 1999, various physicians diagnosed Plaintiff as suffering from permanent disability to varying degrees.  *See id.* at 6-8.  Both Drs. Feynman and Kercull treated Plaintiff's back and neck injuries on several occasions for several years and, therefore, can be considered treating physicians.  *See id.* at 11.  Dr. Feynman treated Plaintiff from June 1980 to November 1981, and Dr. Kercull treated Plaintiff from June 1975 to February 1981.  *See id.* at 6-7.  In March Dr. Feynman estimated that Plaintiff had lost 5% of the flexion and extension of his

cervical spine and 10% of the flexion and extension of his lumbar spine.  *See id.* (citing T. 165).

Subsequently, in November 1981, Dr. Feynman found that Plaintiff was permanently and

completely disabled and was not able to return to any type of work.  *See id.* (citing T. 221, 414).

On the other hand, Dr. Kercull concluded that Plaintiff had a mild partial disability of 25%.  *See*

*id.* at 11.  Dr. Kercull also referred Plaintiff to Dr. Fagelman, a neurosurgeon, who thought it was

possible for Plaintiff to return to work on May 12, 1980.  *See id.* at 7.

On September 25, 1980, Dr. Bronk, who only examined Plaintiff on one occasion,

concluded that Plaintiff was completely disabled.  *See id.* at 7 (citing T. 206-07, 408-09).  In

addition, Dr. Teresi, who examined Plaintiff twice, concluded that Plaintiff had an overall

moderate partial disability of 25% due to a restriction of the motion of his spine.  *See id.* at 8

(citing T. 190).  On June 12, 1981, Dr. Reid, who only examined Plaintiff once, found that

Plaintiff could sit for six hours, stand for four hours, and walk for two hours on a normal work

day.  *See id.*  He also found that Plaintiff could lift twenty pounds occasionally, could

occasionally bend but not squat, crawl or climb, and had no limitation with respect to grasping,

pushing, pulling and other fine manipulation.  *See id.* (citing T. 168-70).  Later that year, Dr.

Schlesinger, who also only examined Plaintiff once, found that Plaintiff could not return to work

as a patrolman or at a desk job but might be able to perform some other light work.  *See id.* at 9.

Plaintiff was treated regularly in a chiropractic center from January 8, 1981, until

February 24, 1999.  *See id.* at 9 (citing T. 364-69, 371-406).  In September 1993, Dr. Mohler, an

orthopedic surgeon, concluded that Plaintiff's degree of disability was moderate, partial and

temporary.  *See id.*  As a result, Dr. Mohler restricted Plaintiff from work that included repetitive

bending, lifting, working overhead, and working heights.  *See id.* (citing T. 310-313).  On

-3-

January 28, 1996, Plaintiff went to an emergency room after falling down a flight of stairs as a result of sudden back pain. *See id.* As a result of this fall, Plaintiff's back had a very tender large area of edema in the lateral left lumbar back and moderately severe ecchymoses, or black-and-blue marks, in a small area of his right lower back. *See id.* at 9-10 (citing T. 326, 447). Subsequently, on November 25, 1997, x-rays showed rotation malposition, mild left scoliosis, arthritic changes in the spine, and decreased spacing between vertebrae. *See id.* at 10. An MRI on December 16, 1999, showed disc desiccation, degenerative changes, and disc bulging at multiple levels. *See id.*

Plaintiff re-applied for benefits on January 27, 1999, but Defendant denied the application initially and on reconsideration. *See id.* Plaintiff, once again, requested and received a hearing before an ALJ, who, on October 22, 1999, denied Plaintiff's claims. *See id.* Defendant's Appeals Council remanded that decision to the ALJ on October 18, 2000, for reconsideration of Plaintiff's subjective complaints and for consultation with a vocational expert. *See id.* at 3. Defendant consolidated Plaintiff's first and second applications for benefits and, on remand, the ALJ denied his claims. On May 3, 2003, Defendant's Appeals Council denied Plaintiff's request for a review, thus making the ALJ's findings Defendant's final decision.

Plaintiff then brought this action pursuant to 42 U.S.C. § 405(g), seeking review of Defendant's final decision and asking for a finding of disability. Defendant cross-moved for a judgment on the pleadings. *See id.* at 1. In support of his motion, Plaintiff relied upon three main arguments. First, he asserted that the ALJ erred when he failed to accord proper weight to the opinion of his treating physician, Dr. Feynman, because the ALJ did not provide good reasons for discrediting that physician's opinion. *See id.* at 3, 10. Second, Plaintiff contended

that the ALJ failed properly to consider his subjective complaints of pain. *See id.* at 3. Finally, Plaintiff claimed that there was insufficient evidence to support the ALJ's finding that he could perform a full range of light work. *See id.* at 3.

Magistrate Judge Homer issued a Report-Recommendation and Order, dated March 29, 2005, in which he recommended that the Court reverse Defendant's decision and remand the case for the calculation of benefits. Specifically, Magistrate Judge Homer found that the ALJ did not follow the treating physician rule, erred in discrediting Plaintiff's subjective complaints of pain, and that there was insufficient evidence to support the ALJ's finding that Plaintiff had the residual functional capacity for light work.

Defendant objects to Magistrate Judge Homer's conclusions and recommendation, arguing that the ALJ followed the treating physician rule and that the ultimate issue of disability is reserved to the Commissioner. *See* Objections at 2. Defendant also asserts that the ALJ did not err in discrediting Plaintiff's subjective complaints of pain because the ALJ considered all the pertinent factors set forth in 20 C.F.R. § 404.1529(c)(3). *See id.* at 5. Finally, Defendant argues that the ALJ correctly found that Plaintiff retained the residual functional capacity for light work because the ALJ put restrictions on the type of work Plaintiff could perform and because Magistrate Judge Homer erred in rejecting the opinions of physicians other than Dr. Feynman. *See id.* at 7-8.

### III. DISCUSSION

**A.     Standard of review**

A claimant seeking disability benefits must establish that "he is unable to engage in any

substantial

substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(1)(3)(A).  Moreover, the claimant's impairments must be so severe that he cannot perform his previous work or any substantial gainful work considering his age, education, and work experience, regardless of whether such work exists in the immediate area or whether the claimant would be hired.  *See* 42 U.S.C. § 1382c(a)(3)(B).

Defendant uses a five-step process to evaluate disability claims.  *See* Report-Recommendation and Order at 4.  She first considers whether the claimant is currently engaged in substantial gainful activity.  If not, Defendant then considers whether the claimant has a "severe impairment" that significantly limits his ability to do basic work.  If such an impairment exists, the third inquiry is whether the particular impairment is listed in the regulations.  If it is, Defendant will consider the claimant disabled.  Otherwise, the fourth inquiry is whether the claimant has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Commissioner must determine whether there is other work that the claimant can perform.  *See id.* at 4-5.  If the claimant establishes that he cannot perform his past work, the burden shifts to Defendant to show that there are other jobs existing in the national economy that the claimant is able to perform.  *See id.*  Defendant can only deny benefits to the claimant if she establishes, based upon specific medical evidence, that the claimant can perform less demanding work.  *See id.* at 5; *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citations omitted).

In reviewing a final decision of the Commissioner, the reviewing court must determine whether she applied the proper legal standards and if there is substantial evidence to support that

decision. *See* Report-Recommendation and Order at 5 (citing *Machadio v. Apfel*, 26 F.3d 103, 108 (2d Cir. 2002)). It is not a reviewing court's function to determine *de novo* whether a plaintiff is disabled; rather, the reviewing court will set aside the "'ALJ's decision only where it is based upon legal error or is not supported by substantial evidence.'" *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)). "The ALJ must articulate specific factors to allow the reviewing court to determine whether substantial evidence supports the decision." *See* Report-Recommendation and Order at 5 (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). Moreover, the ALJ must apply the relevant legal standards when making a decision regarding disability benefits. *See Shaw v. Carter*, 221 F.3d 126, 131 (2d Cir. 2000). If there is substantial evidence to support the Commissioner's decision, it is conclusive; the reviewing court may not substitute its own interpretation of the administrative record for that of the Commissioner. *See* Report-Recommendation and Order at 5 (citing *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998)) (other citations omitted).[1]

## B.    The treating physician rule

The "treating physician rule" mandates that the ALJ give a treating physician's medical opinion controlling weight if it is "well supported by medical findings and not inconsistent with other substantial record evidence." *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998); *see also Shaw*, 221 F.3d at 134. When other substantial evidence in the record conflicts with the treating

---

[1] Although the Commissioner of Social Security is the only Defendant in this action, because the ALJ's findings became the Commissioner's final decision, the Court will refer to the "ALJ" rather than the "Commissioner" in this Memorandum-Decision and Order where appropriate.

physician's opinion, however, the ALJ will not deem that opinion controlling; and the less

consistent the opinion is with the record as a whole, the less weight the ALJ will give it.  *See*

*Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).  However,

the medical opinion of a non-treating physician, "standing alone, [does not] constitute the

contradictory substantial evidence necessary to displace the view of the treating doctor."  *Harris*

*v. R.R. Ret. Bd.*, 948 F.2d 123, 126 (2d Cir. 1991) (citation omitted).

The ALJ must defer to the treating physician's opinion because "it assures fairness to

claimants by giving due weight to the expert who best knows their medical condition."  *Id.*

(citation omitted).  Nonetheless, a treating physician's opinion that a claimant is "disabled" is not

itself determinative because the ultimate finding of disability is "reserved to the [ALJ]."  *Snell*,

177 F.3d at 133.  Thus, the ALJ will consider the evidence that the physicians provide but will

draw his own conclusion as to whether that evidence indicates a disability.  *See id.*  Moreover,

although the ultimate issue of disability is reserved for the ALJ, if he decides not to give the

treating physician's opinion controlling weight regarding this issue, he must explain his reasons

for not doing so.  *See id.* at 134.

In addition, if the ALJ does not give the treating physician's opinion controlling weight,

he must then consider various factors to determine what weight he should accord that opinion,

including "(1) the frequency of examinations, and the length and nature of the treatment

relationship; (2) the evidence supporting the opinion; (3) the opinion's consistency with the

record as a whole; and (4) whether the opinion is from a specialist."  20 C.F.R.

§§ 404.1527(d)(2), 416.927(d)(2).  The ALJ must address *all* the factors that the regulations cite,

as well as provide "good reasons" for the weight he ultimately assigns to the treating physician's

opinion.  *See Schaal*, 134 F.3d at 504-05.  Failure to provide "good reasons" for not crediting a

treating physician's opinion constitutes a ground for remand.  *See* 20 C.F.R. § 404.1527(d)(2).

Furthermore, when "analyzing a treating physician's report, 'the ALJ cannot arbitrarily

substitute his own judgment for competent medical opinion.'"  *Rosa*, 168 F.3d at 79 (2d Cir.

1999) (quotation and other citations omitted).  "'[A] circumstantial critique by [a] non-physician,

however thorough or responsible, must be overwhelmingly compelling' to justify a denial of

benefits."  *Id.* (quoting *Wagner v. Secretary of Health & Human Servs.*, 906 F.2d 856, 862 (2d

Cir. 1990)).  Neither the ALJ nor the reviewing court can "substitute his own expertise or view of

the medical proof for the treating physician's opinion."  *Shaw*, 221 F.3d at 134 (citations

omitted).  Thus, the "ALJ cannot reject a treating physician's diagnosis without first attempting to

fill any clear gaps in the administrative record."  *Rosa*, 168 F.3d at 79 (citations omitted); *see

also Schaal*, 134 F.3d at 505.  If, therefore, the ALJ concludes that the clinical evidence is

inadequate to support the treating physician's opinion, the ALJ has an *affirmative duty* to seek

more information to develop the administrative record.  *See Schaal*, 134 F.3d at 505 (quotation

omitted).

In his Report-Recommendation and Order, Magistrate Judge Homer concluded that the

ALJ did not give proper weight to the opinion of Plaintiff's treating physician, Dr. Feynman.[2]

Moreover, Magistrate Judge Homer found that the record supported Dr. Feynman's opinion, in

particular that several doctors shared his opinion that Plaintiff suffered permanent disability,

although their opinions varied as to the degree of that disability.  *See* Report-Recommendation

---

[2] Magistrate Judge Homer did, however, find that the ALJ had provided a specific reason
for the weight that he gave to Dr. Kercull's opinion.  *See* Report-Recommendation and Order at
11.

and Order at 10-12.  In reaching this conclusion, Magistrate Judge Homer noted that a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable techniques and is consistent with other substantial evidence.  *See id.* at 10.  Moreover, he noted that, if an ALJ discounts a treating physician's opinion, he must provide good reasons for doing so, and that, in this case, the ALJ did not provide any such reasons.  *See id.* Accordingly, Magistrate Judge Homer recommended that, because Dr. Feynman's opinion was consistent with other substantial evidence in the record and the ALJ failed to afford his opinion the proper weight, this Court grant Plaintiff's motion on this ground.  *See id.* at 12.

Defendant objects to Magistrate Judge Homer's conclusion and recommendation, arguing that the issue of whether an individual meets the statutory definition of "disability" is reserved for the ALJ.  *See* Defendant's Objections at 2.  Therefore, she asserts that a physician's opinion that a claimant is disabled is not necessarily entitled to controlling weight.  *See id.*  Finally, although Defendant acknowledges that an ALJ must explain why he has not credited the treating physician's opinion, she argues that the ALJ in this case satisfied that requirement by noting that Dr. Feynman did not support his opinion with clinical findings.  *See id.*

In the alternative, Defendant asserts that Dr. Feynman's opinion that Plaintiff is permanently disabled is not consistent with the other substantial evidence in the record because the opinions that Plaintiff was completely disabled were not made in the context of the Social Security Act.  Moreover, Defendant contends that the opinions of other doctors, including that of Dr. Kercull, Plaintiff's treating orthopedist, support the ALJ's conclusion that Plaintiff is not disabled from all substantial gainful activity, which is what 42 U.S.C. § 423(d)(1)(A) requires.

Having reviewed the entire record, the Court agrees with Magistrate Judge Homer's

conclusion that, based upon the length of his treatment relationship with Plaintiff and the number of treatments that he provided to Plaintiff, Dr. Feynman is clearly Plaintiff's treating physician. *See* Report-Recommendation and Order at 11. Thus, if medical evidence supports Dr. Feynman's opinion and that opinion is not inconsistent with other substantial evidence in the record, the ALJ was required to afford Dr. Feynman's opinion controlling weight. *See Schaal*, 134 F.3d at 504. In addition, even if the record does not support Dr. Feynman's opinion, the ALJ was required to provide "good reasons" for discrediting that opinion. *See id.*

Dr. Feynman opined that Plaintiff is permanently and totally disabled. Nowhere in his report did the ALJ provide a good reason for rejecting this opinion. Specifically, the ALJ did not address the frequency and/or nature of Dr. Feynman's examinations of Plaintiff, nor did he address the nature of the treatment relationship between Plaintiff and Dr. Feynman as the regulations require. *See Schaal*, 134 F.3d at 504 (citing 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i)). Moreover, because the ALJ found that there was a lack of clinical findings to support Dr. Feynman's opinion, he had an *affirmative duty* to develop the record to fill that gap. *See id.* at 505. However, he did not do so. Therefore, the ALJ's finding that there was a lack of data to support Dr. Feynman's diagnosis alone is not a ground for rejecting that diagnosis. *See id.* Accordingly, because the ALJ's failure to provide a good reason for not crediting Dr. Feynman's opinion is a sufficient basis for remand, the Court adopts Magistrate Judge Homer's conclusions regarding this issue.

Alternatively, the Court notes that the ALJ improperly inserted his "own expertise against that of" Dr. Feynman. *Rosa*, 168 F.3d at 79. In this regard, the ALJ concluded that objective medical evidence did not support Dr. Feynman's opinion because "X-rays revealed limited

abnormalities . . . the claimant had limitation of motion in the lumbosacral spine . . . but neurological signs remained normal without clinical evidence to suggest the presence of nerve root movement." *See* Transcript at 16.  However, as a "lay person," the ALJ "simply was not in a position to know whether" such evidence would, in fact, preclude the disability that Dr. Feynman described in his assessment.  *Rosa*, 168 F.3d at 79.  Nor was the ALJ permitted to substitute his own expertise for that of Dr. Feynman by analyzing the medical evidence.  *See Shaw*, 221 F.3d at 134.

Finally, as Magistrate Judge Homer noted, there is substantial evidence in the record to support Dr. Feynman's opinion.  *See* Report-Recommendation and Order at 12.  Although there may also be medical evidence or opinions of other physicians that conflict with Dr. Feynman's opinion, the ALJ should have, nonetheless, given Dr. Feynman's opinion controlling weight or explained why he did not do so because Dr. Feynman was Plaintiff's treating physician.  Since the ALJ did not do so and, thus, failed to apply the correct legal standard when he disregarded Dr. Feynman's diagnosis, the Court will remand this case to Defendant so that she can ensure that the ALJ applies the correct legal standards and fills any gaps in the record necessary to his analysis of Dr. Feynman's opinion.

**C.     Plaintiff's subjective complaints of pain**

Throughout the evaluation process, the ALJ is required to consider the complainant's subjective complaints of pain.  *See Martone*, 70 F. Supp. 2d at 151 (citing [20 C.F.R.] §§ 404.1529(a), (d), 416.929(a), (d)).  However, there must be objective medical evidence to support that subjective evidence, such as medical evidence that the claimant has an impairment

that would reasonably produce the pain he alleges. *See id.* If medical evidence shows such an impairment, then the ALJ must evaluate the claimant's symptoms to determine whether they limit the claimant's capacity for work. *See id.* (citing [20 C.F.R.] §§ 404.1529(c), 416.929(c)). Symptoms may indicate a greater severity of impairment than the objective medical evidence *alone*; therefore, the ALJ must consider all information that the claimant submits concerning his symptoms. *See id.* (citations omitted).

Factors that are relevant to the assessment of a plaintiff's subjective complaints of pain include "(1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications taken to relieve symptoms; (5) other treatment taken to relieve symptoms; and (6) any other measures received to relieve symptoms." *Id.* (citing [20 C.F.R.] §§ 404.1529(c)(2)(i)-(vi), 416.929(c)(3)(i)-(vi)). "A claimant's work history and motivation to work are also indicia of credibility." *Dombrowski v. Chater*, 960 F. Supp. 558, 565 (N.D.N.Y. 1997) (citations omitted); *see also Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (holding that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

Furthermore, although an ALJ may decide to disregard a claimant's subjective complaints of pain if there are inconsistencies between the medical evidence and his complaints regarding his degree of impairment, *see Martone*, 70 F. Supp. 2d at 151 (citations omitted), an ALJ who does reject such subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.'" *Id.* (quoting *Brandon v.*

-13-

*Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).

After reviewing the record, Magistrate Judge Homer found that only the opinions of Drs. Reid and Schlesinger, both of whom examined Plaintiff only once, support the ALJ's finding that Plaintiff is not disabled. *See* Report-Recommendation and Order at 15. Moreover, Magistrate Judge Homer concluded that the ALJ erred in rejecting Plaintiff's subjective complaints of pain by failing to consider Plaintiff's good work history, his extensive and continuous treatments, multiple medications, and other evidence of a condition that would reasonably produce pain.[3] *See id.* at 12-15. Accordingly, Magistrate Judge Homer recommended that, because there was not substantial evidence in the record to support the ALJ's rejection of Plaintiff's claims of subjective pain, this Court grant Plaintiff's motion on this ground. *See id.*

Defendant objects, arguing that the ALJ did not err in discrediting Plaintiff's subjective complaints of pain because, in making this determination, the ALJ considered the pertinent factors, such as descriptions of pain, treatment modalities, and Plaintiff's daily activities and based his finding that Plaintiff's allegations were not credible on the totality of the evidence. *See* Defendant's Objections at 5. Moreover, Defendant contends that the Court may not reweigh the evidence and substitute its views for those of the ALJ.

In addition, Defendant attacks the factors upon which Magistrate Judge Homer relied to reach his conclusion. *See id.* at 5-7. In particular, Defendant argues that Plaintiff's good work

---

[3] Magistrate Judge Homer noted that Plaintiff took several medications, including Zomax, Flexeril, Empirin, and Darvocet, used a TENS, had electric stimulation and physical therapy, used analgesics, local heat, and engaged in exercise programs. *See* Report-Recommendation and Order at 14 (citing T. 56, 65, 71, 168, 214). Moreover, he noted that Plaintiff had made regular visits to a chiropractor from 1981 to 1999 and was also taken to an emergency room for an acute onset of back pain. *See id.* (citing T. 324, 364-69, 371-406).

record would need to be substantially longer to add to his credibility, that Plaintiff's motives in collecting disability may be based upon factors other than an inability to work, and that Dr. Feynman's opinion is not consistent with the opinions of several other physicians.

Plaintiff testified that he had constant pain in his back and neck that radiated into both legs, that he experienced numbness in his legs that was aggravated by staying in one position for a long period, and that he could only sleep for two hours at a time. *See* Report-Recommendation and Order at 14. Nonetheless, the ALJ concluded that Plaintiff's subjective complaints of pain were not totally credible in light of Plaintiff's daily activities, medical findings, and the opinions of examining physicians. *See* Transcript at 17.

Had the ALJ rejected Plaintiff's claims of subjective pain solely on the basis that objective medical evidence "did not establish a cause for such intense pain," his decision would have been based upon legal error. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (quoting *Northcutt v. Califano*, 581 F.2d at 166 ("Disregard of a claimant's subjective complaints of pain . . . is not justified solely because there exists no objective evidence in support of such complaints.")). Nonetheless, the additional factors that the ALJ cited in support of his decision are not dispositive. Doing laundry, watching television, reading, socializing, and even hunting do not necessarily indicate a lack of disability. There is, first of all, no evidence that Plaintiff "'engaged in any of these activities for sustained periods comparable to those required to [do light work].'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quotation omitted); *see also Carroll v. Sec. of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983). The Second Circuit has stated on numerous occasions that "'a claimant need not be an invalid to be found disabled.'" *Balsamo*, 142 F.3d at 81 (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)).

-15-

Moreover, as Magistrate Judge Homer noted, the ALJ did not consider such pertinent factors as Plaintiff's numerous medications, his extensive treatments, and his good work record. *See* Report-Recommendation and Order at 14.  Plaintiff's extensive and continuous treatments indicate an impairment that would reasonably cause pain.  In addition, Plaintiff has a good work record as a police officer for sixteen years, and the Second Circuit gives substantial weight to the credibility of a claimant who has such a strong work history.  *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983).[4]

Finally, although the ALJ rejected Plaintiff's credibility explicitly and with specificity in accordance with *Martone*, as a reviewing court, this Court has the authority to decide whether the ALJ's reasons were legitimate and supported by substantial evidence.  *See Martone*, 70 F. Supp. 2d at 151.  After reviewing the record, the Court concludes that the ALJ did not cite legitimate reasons for rejecting Plaintiff's credibility and, moreover, as Magistrate Judge Homer noted, there is ample evidence in the record to support Plaintiff's subjective complaints of pain.  Accordingly, in light of Plaintiff's extensive treatment modalities, various medications, and good work history, the Court finds that Plaintiff's subjective complaints of pain are credible and that on remand the ALJ must consider these complaints credible.

---

[4] Defendant's assertion that Plaintiff's work history needs to be much longer to affect his credibility is without merit.  In *Rivera*, the court did not, as Defendant implies, establish a cut-off or length requirement as to what would constitute a "good work history."  Plaintiff's sixteen years as a police officer, coupled with his attempt to return to light work after his third accident, constitutes a "good work history" and bolsters his credibility with respect to his claim that he is unable to work because of his disability.

-16-

**D.      Plaintiff's residual functional capacity for substantial gainful employment**

Residual functional capacity ("RFC") is what a claimant can still do despite his

impairments and any related symptoms. *See* C.F.R. § 416.945(a). "[T]to determine whether a

claimant can do a certain category of work, the ALJ must determine plaintiff's strength

limitations . . . which includes the ability to sit, stand, walk, lift, carry, push and pull." *Martone*,

70 F. Supp. 2d at 150 (citing [20 C.F.R.] §§ 404.1569a(a), 416.969a(a)).  The ALJ must specify

the functions a plaintiff can perform, and conclusory statements about a plaintiff's capacity are

not sufficient. *See id.* (citations omitted).  If the claimant can perform work that exists in the

national economy, then a finding that he is not disabled is proper; but, if the claimant can only do

work that does not exist in the national economy, then the ALJ must consider him disabled. *See*

*id.* (citing [20 C.F.R.] §§ 404.1545(a), 416.945(a)).  "'[W]ork exists in the national economy

when it exists in significant numbers either in the region where [the claimant] live[s] or in

several other regions of the country.'"  *Id.* (quoting [20 C.F.R.] §§ 404.1566(a), 416.966(a)).

Jobs in the national economy are classified in terms of their physical exertion

requirements as either "sedentary," light," "medium," "heavy," or "very heavy."  *See id.* (citing

[20 C.F.R.] §§ 404.1567, 416.967).  Light work requires the ability to lift up to twenty pounds

occasionally, with lifting of ten-pound objects frequently.  *See id.* (citations omitted).  A job will

fall into the light category if it involves a good deal of walking, standing or sitting most of the

time with some pushing and pulling of the arm or leg.  *See id.* (citations omitted).  An individual

who can perform "light work is considered able to do sedentary work," unless he has additional

limiting factors such as an inability to sit for long periods of time.  *Id.* (quotations omitted).

Finally, a finding that a claimant has RFC can only be established if there is substantial evidence

-17-

that the claimant can perform each physical requirement listed in the regulations. *See id.*
(citations omitted).

As noted above, once the claimant makes a showing that he cannot perform his past
relevant work, the burden shifts to the ALJ to prove that the claimant can perform other work
that exists in the national economy. *See Martone*, 70 F. Supp. 2d at 149. To meet this burden,
the ALJ must show that there is substantial evidence that the claimant retains the RFC for the
lower level of work. *See id.*

Magistrate Judge Homer found that, given Plaintiff's extensive treatments, the number of
physicians who found him unable to work, and his subjective complaints of pain, there was no
substantial evidence to support each of the requirements for light work and, thus, to establish that
Plaintiff had RFC. *See id.* at 18. Moreover, Magistrate Judge Homer concluded that the ALJ
erred when he concluded that Plaintiff had the RFC to perform light work because, among other
things, the several physicians did not opine regarding all the elements of light work. *See id.* at
17. Finally, Magistrate Judge Homer noted that the ALJ failed to take into account Plaintiff's
subjective complaints of pain and failed to give controlling weight to the opinion of Plaintiff's
treating physician. *See id.* at 18. Therefore, he recommended that this Court grant Plaintiff's
motion on this ground. *See id.* at 16-18.

Defendant objects to Magistrate Judge Homer's findings and conclusion, asserting that he
erroneously based these conclusions on the opinion of the only physician, Dr. Feynman, who
opined that Plaintiff was unable to perform any gainful activity. *See* Defendant's Objections at 7.
Moreover, Defendant contends that the opinions of Drs. Bronk, Tersesi, Kercull, and Mohler are
consistent with the ALJ's finding that Plaintiff possesses the RFC to perform light work. *See id.*

at 8.  Therefore, Defendant claims that the ALJ's conclusion that Plaintiff retained the RFC for

light work with certain restrictions was based upon substantial evidence in the record.  *See id.*[5]

Both the ALJ and Magistrate Judge Homer concluded that Plaintiff is unable to perform

his past relevant work as a police officer, but, unlike Magistrate Judge Homer, the ALJ

concluded that Plaintiff retained the RFC to perform light work with certain restrictions.[6]  The

ALJ also found that Plaintiff was able to lift twenty pounds occasionally and ten pounds

frequently, *see* T. 17, and that this ability would be sufficient for light work pursuant to 20 C.F.R.

§ 416.967(b).[7]  The medical evidence, however, does not support this conclusion with sufficient

certainty.  Dr. Feynman, Plaintiff's treating physician, diagnosed Plaintiff as permanently

disabled, as did Dr. Bronk.  However, as Magistrate Judge Homer noted, Dr. Kercull, another of

Plaintiff's treating physicians, as well as Drs. Teresesi and Mohler, opined that Plaintiff was only

partially disabled.  Moreover, Drs. Reid and Schlesinger found that Plaintiff was not disabled.

*See* Report-Recommendation and Order at 15.  Dr. Feynman, in fact, was the only physician to

diagnose Plaintiff as permanently and *completely* disabled.  *See id.*  However, as Magistrate

Judge Homer noted, none of the physicians diagnosed Plaintiff with regard to all the elements of

---

[5] In the alternative, Defendant asserts that, if this Court finds that the ALJ did not apply the correct legal standards in evaluating the evidence, the Court should remand for further proceedings rather than for the calculation of benefits.  *See id.*

[6] In this regard, the ALJ concluded that the work must allow Plaintiff to change position every twenty to thirty minutes, must not require repetitive bending, and must not require working in hazardous situations such as heights, moving machinery, or temperature extremes.  *See* T. 15, 17.

[7] As noted, if a claimant is not capable of performing light work, he is generally presumed able to perform sedentary work.  However, because Plaintiff has an impairment that limits him from staying in one position for extended periods, he may not be able to perform sedentary work.  *See Martone*, 70 F. Supp. 2d at 150.

light work. *See* Report-Recommendation and Order at 17.  Absent such findings, Defendant did

not prove that Plaintiff can perform the full range of light work; however, because of the

disparity between the several diagnoses, this fact does not lead to an obvious conclusion

regarding Plaintiff's disability.

When application of the correct legal standards does not lead "inexorably to a single

conclusion," the proper course for the reviewing court is to remand the case to allow the ALJ to

reweigh the evidence pursuant to the correct legal standards and develop the record as needed.

*See Schaal*, 134 F.3d at 505.  Thus, in this case, the Court concludes that a remand limited to the

calculation of benefits, as Magistrate Judge Homer recommended, as opposed to a remand for

further proceedings consistent with this Order, would not be appropriate because the disparity

between the different diagnoses (including the opinions of treating physicians Drs. Feynman and

Kercull) does not lead inexorably to a single conclusion regarding Plaintiff's disability.

Accordingly, due to the uncertainty of Plaintiff's condition, the Court remands this case to

Defendant so that she can undertake the fifth step of the required analysis, i.e., so that she can

show that Plaintiff can perform other work in the economy even if he cannot perform his past

work as a police officer. *See Shaw*, 221 F.3d at 135.[8,9]

---

[8] A reviewing court has the authority to reverse with or without remand.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  As Magistrate Judge Homer noted, reversal is appropriate when there is "persuasive proof of disability" that warrants awarding damages without the Commissioner's further review.  *See* Report-Recommendation and Order at 18.  Applying this standard, Magistrate Judge Homer recommended that this Court reverse Defendant's decision and remand for calculation of benefits based upon the "voluminous record which supports [Plaintiff's] claim of disability."  *See id.*

[9] This assumes, of course, that, on remand, it is necessary for the ALJ to reach the fifth step of the analysis.  In other words, based upon other factors, the ALJ may determine that

(continued...)

## IV. CONCLUSION

After carefully considering Magistrate Judge Homer's Report-Recommendation and Order, Defendant's objections, the relevant parts of the record, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Homer's Report-Recommendation and Order, dated March 29, 2005, is **ADOPTED IN PART AND REJECTED IN PART**; and the Court further

**ORDERS** that this action is remanded to the Commissioner for further proceedings in compliance with this Order.

**IT IS SO ORDERED.**

Dated: August 30, 2005
       Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Chief United States District Court Judge

---

[9](...continued)
Plaintiff is disabled and thus entitled to benefits without reaching this fifth step.  Moreover, as the Court has noted, on remand, the ALJ must fill the gaps necessary to its analysis of Dr. Feynman's opinion as Plaintiff's treating physician, must consider Plaintiff's subjective complaints of pain as credible, and must apply the correct legal standards to determine whether Plaintiff is disabled.  After all of this is done, since there is no disagreement that Plaintiff cannot perform his past work, Defendant must show that there are other jobs existing in the national economy that Plaintiff is able to perform.